OPINION
Appellant, Gloria Blevins, appeals the decision of the Clermont County Court of Common Pleas, Juvenile Division, to terminate appellant's parental rights and grant permanent custody of her son, Andrew, to the Clermont County Department of Human Services ("CCDHS"). We affirm.
On November 24, 1992, CCDHS filed a complaint alleging that Andrew was dependent. The complaint was predicated on lack of proper care for Andrew due to appellant's mental illness. According to the complaint, Andrew went to school with scratches and a bruise in the shape of a hand. On December 29, 1992, after a hearing, the Clermont County Court of Common Pleas, Juvenile Division, granted CCDHS temporary custody of Andrew, but allowed Andrew to remain with appellant under the protective supervision of CCDHS. On May 18, 1993, the juvenile court granted temporary custody of Andrew to his maternal grandparents, Roger and Leona Sturgis. However, the maternal grandparents were unable to continue care. On March 13, 1995, a motion was filed by CCDHS to change temporary custody back to CCDHS. On March 14, 1995, temporary custody was returned to CCDHS.
On July 11, 1996, CCDHS moved to terminate appellant's parental rights and for permanent custody of Andrew. The June 12, 1997 report of the guardian ad litem recommended the court grant the motion. After a hearing, a magistrate recommended the motion be granted. The trial court adopted the report and recommendations of the magistrate.
Appellant filed a timely notice of appeal and presents two assignments of error for our review:
Assignment of Error No. 1:
 THE MAGISTRATE ERRED AS A MATTER OF LAW IN FAILING TO DELINEATE THE PRECISE STATUTORY FACTORS SET FORTH IN R.C. SECTION 2151.414(E) THAT HE RELIED UPON IN GRANTING THE AGENCY'S MOTION FOR PERMANENT CUSTODY.
Assignment of Error No. 2:
 THE MAGISTRATE ERRED IN GRANTING THE AGENCY'S MOTION FOR PERMANENT CUSTODY BECAUSE THE AGENCY FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILD CANNOT BE PLACED WITH THE CHILD'S PARENTS WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH THE CHILD'S PARENTS AND THAT A GRANT OF CUSTODY TO THE AGENCY IS IN THE CHILD'S BEST INTEREST.
As it raises the central question addressed by the trial court, we address the second assignment of error out of order. In the second assignment of error, appellant argues that CCDHS failed to establish, by clear and convincing evidence, that the statutory requirements for terminating appellant's parental rights and granting permanent custody to CCDHS were satisfied.
We initially note that natural parents have a constitutionally protected liberty interest in the care and custody of their children. See Santosky v. Kramer (1982), 455 U.S. 745,102 S.Ct. 1388. A motion by the state to terminate parental rights "seeks not merely to infringe that fundamental liberty interest, but to end it." Id. at 759, 102 S.Ct. at 1397. In order to meet the constitutional demands of due process, the state is required to demonstrate by clear and convincing evidence that the statutory standards have been met. Id. at 769, 102 S.Ct. at 1403. "Clear and convincing evidence" requires that the proof "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of syllabus.
When a state agency moves for permanent custody, the trial court is required to hold a hearing to determine "if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." R.C. 2151.414(A)(1). In order to grant permanent custody to a state agency, the agency must demonstrate that it is in the best interest of the child and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents;
 (2) The child is abandoned and the parents cannot be located;
 (3) The child is orphaned and there are no relatives of the child who are able to take permanent custody.
R.C. 2151.414(B).
At a permanent custody hearing, the trial court shall consider all factors relevant to the child's best interest. R.C. 2151.414
(D). The factors include, but are not limited to:
 (1) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressly directed by the child or through the guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether the type of placement can be achieved without a grant of permanent custody to the agency.
Id.
In this case, the trial court considered the best interest of Andrew. At the permanent custody hearing, Clarence Pauley, a supervisor of the Permanency Planning Unit of CCDHS, testified to Andrew's chances for adoption. The testimony was undisputed. The report of July 31, 1997 summarized Pauley's testimony as follows:
 This is a crucial time for this child as far as his chances of being adopted are concerned. At 10 years of age he is on the borderline. Mr. Pauley estimated that the probability of adoption would be 80-85%. It would take 6 months to 1 year if the current care givers do not wish to adopt the child.
The trial court concluded that:
 Given the custodial history of the child, he has a significant need for a legally secure placement. There is a good chance the need could be met in an adoptive home if permanent custody was granted to the Agency. Considering all relevant factors, including those listed in the statute, the Magistrate finds by clear and convincing evidence that it is in the best interest of the child to grant permanent custody to the Agency. (Emphasis added.)
The reality is Andrew has been in temporary custody of CCDHS about half of his life. The trial court clearly used the best interest standard and applied the factors in R.C. 2151.414(D)(3) and (4). Also, as further discussed below, the interaction of the child with appellant has been limited throughout CCDHS' temporary custody of Andrew. See R.C. 2151.414(D)(1). Clear and convincing evidence supports the trial court's decision under the best interest standard of R.C. 2151.414(D). We now address the requirements of R.C. 2151.414(E).
When granting permanent custody to a public children services agency, the trial court also must find that one of the factors enumerated in R.C. 2151.414(E) exist. In re William S. (1996),75 Ohio St.3d 95, syllabus. The factors include:[1]
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. * * *
 (2) Chronic mental illness, chronic emotional illness * * * that is so severe that it makes the parent unable to provide an adequate permanent home for the child * * *.
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.
* * *
(12) Any other factor the court considers relevant.
R.C.2151.414(E). If one of the factors apply, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." Id.
Mindy King, an employee of CCDHS, was the caseworker for appellant's case. King testified that she began her involvement in the case in February 1994. King stated appellant's "case plan included counseling and case management afforded by the agency as well as therapeutic services, diagnostic services, parenting at one point in time. Also homemaker services were offered to her." King characterized appellant's participation in the case plan as "minimal" and noted "[appellant] never was actively involved with individual therapy." King also stated appellant had "virtually no parental interest with visits." When Andrew did visit appellant, King found afterward Andrew "would sometimes have a response of being very sullen, very withdrawn, and other times being very rageful."
King emphasized to appellant the importance of participating in the case plan and cooperating with CCDHS.[2] King found appellant generally cooperative, but indicated that "there was no follow through." See R.C. 2151.414(E)(1) and (4). According to King, appellant was briefly employed with three different employers. The record indicates that appellant is unemployed and receiving SSI disability due to her mental illness.
Overall, King testified that "[appellant] does have an extensive history of mental health issues." She described the problems as "deeply ingrained" and noted that appellant's first hospitalization was at the age of five.
Cheryl M. Williams, appellant's therapist and an employee of Brown County Counseling, testified that she diagnosed appellant with schizophrenia, paranoid type, in September 1996. Since that time, Williams has provided regular psychotherapy to appellant. According to Williams, appellant is no longer having delusions and hallucinations, typical symptoms of schizophrenia, due to medication. Williams' opinion was that appellant could take care of Andrew. Williams felt that if appellant stopped taking medication, the symptoms would return and appellant could not properly parent Andrew. Williams was not familiar with the details of appellant's case and never contacted CCDHS.
Appellant testified that she was originally diagnosed with schizophrenia in 1983. Due to her mental illness, appellant is not employed. Appellant explained that she failed to follow up with CCDHS counseling and parenting classes due to her mental illness and lack of transportation. The record does not indicate appellant attempted to facilitate transportation with CCDHS or anyone else. The record does reflect appellant may have received ineffective treatment from a previous psychiatrist, Bernard DeSilva. Nevertheless, appellant's participation in CCDHS programs since 1992 has been minimal.
In reviewing the entire record, we find that clear and convincing evidence supports the decision of the trial court to permanently terminate appellant's parental rights over Andrew and grant permanent custody to CCDHS. Andrew has been in foster care for three years and was adjudicated dependent in 1992. Appellant's recent efforts to treat her mental illness are laudable. Nevertheless, appellant has not sufficiently participated in counseling and other services offered by CCDHS. Almost six years have passed since the original dependency complaint was filed by CCDHS. Moreover, appellant's schizophrenia was diagnosed in 1983 and effective treatment has only occurred recently. The trial court was entitled to consider the consequences if appellant discontinued her medication. Overall, the record does not demonstrate Andrew can be returned to appellant's care within a reasonable time. See R.C.2151.414(A)(1). Therefore, the second assignment of error is overruled.
In the first assignment of error, appellant argues the trial court failed to delineate the applicable factors of R.C.2151.414(D) and (E). The trial court is not required to specifically cite the applicable statutory factors of R.C.2151.414. In the Matter of Malone (May 11, 1994), Scioto App. No. 93CA2165, unreported, at 3. Instead, the relevant inquiry is if the trial court applied the statutory factors of R.C. 2151.414 to the facts of the case. Id. As detailed in the discussion of the second assignment of error, the trial court followed the mandates of R.C. 2151.414(D) and (E). Accordingly, the first assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.
[1] When William S. was decided, R.C. 2151.414(E) included eight specific factors. R.C. 2151.414(E) was subsequently revised to include twelve factors. Factor twelve is "[any] other factor the court considers relevant." R.C. 2151.414(E)(12). Consequently, the importance of the holding in William S. has been greatly diminished.
[2] We agree with appellant that compliance with the case plan is not the standard per se for terminating parental rights and granting permanent custody of a child to CCDHS. However, a parent's cooperation with counseling and other services specified in the case plan is a relevant inquiry to determine if a child can be returned to a parent within a reasonable time.